OTC

RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

FEB 0 4 2026

DANIEL J. McCOY, CLERK

BY:_____

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

|  |  |
|---|---|
| TREVOR RAY, Plaintiff. | |
| v. | Case No: 3:26-cv-0344 |
| SGT. LARRY SHAPPLEY, Louisiana State Police, in his individual and official capacities; and CAPTAIN ERIC CUENCA, Louisiana State Police, in his individual and Official capacities, Defendants. | |

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES UNDER 42 U.S.C. § 1983 FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS

Plaintiff, Trevor Ray, respectfully files this Complaint for declaratory relief, injunctive relief, and damages against Defendants Sgt. Larry Shappley and Captain Eric Cuenca, in their individual and official capacities, pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

### A. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

2. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Ouachita Parish, which is within the Western District of Louisiana, Monroe Division.

## B. PARTIES

1. Plaintiff Trevor Ray is a resident of Ouachita Parish, Louisiana.

2. Defendant Sgt. Larry Shappley is, upon information and belief, a commissioned officer employed by the Louisiana State Police and is sued in his individual and official capacities.

3. Defendant Captain Eric Cuenca is, upon information and belief, the commanding officer of Louisiana State Police Troop F and is sued in his individual and official capacities.

## C. BACKGROUND

At all relevant times, Plaintiff Trevor Ray was a party to an ongoing child custody proceeding in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, docket number 22-3907, involving his minor children and his former spouse, Annsley Walden Ray (now Annsley Walden Shappley). The custody matter was initiated on November 3, 2022, prior to the events giving rise to this action and remains active up to at least the time of this filing.

The state-court custody proceedings included court-ordered custody schedules, exchange protocols, and communication requirements governing the parents' interactions. These orders regulated, among other things, the timing and location of child custody exchanges and the manner in which the parties were to communicate regarding matters affecting the children.

Defendant Sgt. Larry Shappley, a commissioned officer with the Louisiana State Police, married the Plaintiff's former spouse on or about November 10, 2024. Defendant Shappley is not a party to the custody proceedings, is not named in any custody order, and holds no custodial or parental rights with respect to the minor children.

The events alleged in this action occurred against the backdrop of this active and contested custody matter, which remained pending in state court at the time the conduct described in this Complaint took place.

## D. FACTUAL ALLEGATIONS

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. The constitutional rights implicated in this Complaint were clearly established at the time of each alleged violation. The right to be free from warrantless surveillance of one's home without legal justification, retaliation for protected speech, and misuse of state power for personal purposes were all settled law. No reasonable officer could believe that such conduct was lawful under the circumstances alleged herein.

Beginning in March 2025, Plaintiff was subjected to warrantless surveillance, retaliatory conduct and misuse of government authority by Defendant Shappley. Defendant Cuenca, acting in a supervisory capacity, was placed on notice of these violations and failed to act, despite acknowledging the conduct was unjustified.

## 1. Violation of Fourth Amendment – Warrantless Surveillance of Private Residence

On or about March 29, 2025, at approximately 2:41 a.m., Defendant Sgt. Larry Shappley, while on duty, in full uniform, and operating a marked Louisiana State Police patrol unit, drove past the private residence of Plaintiff Trevor Ray without any dispatch, warrant, call for service, or investigatory purpose. Plaintiff and his minor children were asleep inside the residence at the time. The surveillance was not in response to a complaint, call for assistance, or ongoing investigation, nor was it connected to any known law enforcement interest.

Defendant Shappley later admitted under oath that the visit was not connected to any official purpose, and his own commanding officer, Captain Eric Cuenca, acknowledged in writing the following:

> *"...no indication that these drive-bys were for any official purpose."*
>
> — LSP Captain Eric Cuenca, April 7, 2025 (email to Plaintiff in response to complaint)

Despite his commanding officer clearly stating that Defendant Shappley had no official purpose to be outside of Plaintiffs residence at the time and date above, Defendant Shappley perjured himself on September 3, 2025, swearing under oath he possessed a law enforcement purpose for his actions.

During that same sworn testimony on September 3, 2025, Defendant Shappley made further statements demonstrating that the March 29, 2025, drive-by was not an isolated or incidental occurrence, but part of sustained monitoring of Plaintiff's whereabouts. Specifically, Defendant Shappley testified that Plaintiff had been *"hiding out for eight days,"* a statement that necessarily implies prolonged observation of Plaintiff's residence and movements. Plaintiff had

not disclosed his whereabouts to Defendant Shappley, was not under supervision, and was not subject to any lawful monitoring that would explain Defendant Shappley's claimed knowledge.

In the same proceedings, Defendant Shappley further admitted that the purpose of driving by Plaintiff's residence at 2:41 a.m. was to *"make sure he [Plaintiff] was where he belonged."* This statement establishes that the drive-by was undertaken to obtain information about Plaintiff's location, not as a coincidental pass along a public roadway.

This warrantless surveillance occurred during an ongoing child custody dispute between Plaintiff and Defendant Shappley's wife, Annsley Walden Shappley, his ex-spouse who is suing Plaintiff for sole custody of their children in state court. Sgt. Shappley's conduct constituted a personal intervention into that dispute under color of law, rather than any legitimate governmental function. Plaintiff had a reasonable expectation of privacy in the sanctity of his home, particularly during overnight hours with his small children present.

On March 30, 2025, less than twenty-four hours after Sergeant Larry Shappley was recorded outside Plaintiff's residence at approximately 2:41 a.m., Sergeant Shappley again involved himself in Plaintiff's private affairs by positioning himself near Plaintiff's home during a court-ordered child custody exchange. At the time, Sergeant Shappley was in uniform, on duty, and operating a marked Louisiana State Police patrol unit.

Security camera footage shows that on March 30, 2025, at approximately 5:55PM, Sergeant Shappley positioned up the road from Plaintiff's residence in a marked Louisiana State Police vehicle while Plaintiff's coparent arrived at the home for the scheduled custody exchange. Sergeant Shappley did not approach the residence, make contact, render assistance, or engage in any law-enforcement activity. There was no emergency, no call for service, no disturbance, and no lawful justification for his presence in the immediate vicinity of the exchange.

This conduct occurred even though custody exchanges were governed by a valid court order and had not required law-enforcement involvement. Sergeant Shappley had no role in the exchange, was not a party to the custody case, and had no authority to monitor or oversee the interaction. His presence served no legitimate governmental purpose and was unnecessary for public safety.

The timing and context of Sergeant Shappley's actions are significant. The shadowing of the custody exchange occurred the day after Sergeant Shappley was recorded surveilling Plaintiff's residence in the early morning hours. Viewed together, these actions demonstrate a continuation of on-duty involvement in a personal dispute in which Sergeant Shappley had a direct familial interest.

Sergeant Shappley's visible, armed, presence in a marked patrol unit during a sensitive family exchange reasonably conveyed an implicit assertion of state authority. For a private citizen engaged in custody litigation against the trooper's spouse, the presence of an armed, uniformed state trooper—without explanation or lawful purpose—was inherently intimidating and coercive. Even absent verbal interaction, the appearance and positioning of law enforcement authority is sufficient to chill lawful conduct and interfere with the free exercise of parental rights.

This conduct further demonstrates misuse of official position, improper personal involvement in a private dispute, and retaliatory behavior following Plaintiff's arrest and prior complaints to law enforcement. It also reflects a pattern of behavior in which Sergeant Shappley used LSP resources—uniform, patrol vehicle, and on-duty status—to monitor and insert himself into Plaintiff's personal and legal affairs without authorization. At no time on March 28, 2025, March

29, 2025, or March 30, 2025, was Plaintiff suspected of committing any crime or subject to any active investigation by the Louisiana State Police.

Plaintiff asserts that the home is a core protected zone. The drive-by surveillance (especially coupled with intent to monitor) meets the threshold for an unreasonable search. Defendant's actions were objectively unreasonable and constituted a warrantless search in violation of the Fourth Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment. As a direct and proximate result of this unconstitutional surveillance, Plaintiff suffered:

- Emotional distress and fear,
- Intrusion upon familial and residential privacy,
- Further retaliatory conduct stemming from the misuse of police authority.

## 2. Violation of First Amendment - State Retaliation to Constitutionally Protected Speech

On March 28, 2025, at approximately 9:45 PM, Plaintiff Trevor Ray sent a coparenting text message to Annsley Walden Shappley (his former spouse) regarding the custody and well-being of their minor children. The message concerned a direct, court-ordered coparenting obligation under Paragraph 5(a) of the co-parents custody order. The message was constitutionally protected speech, directly related to Plaintiff's parental rights and duties under a standing custody order. The text contained no threats, abusive language, or violations of law. It reminded Mrs. Shappley to communicate directly with Plaintiff, as required by the order, rather than through third parties as she had earlier that day. Within hours, on March 29, 2025, Defendant Sgt. Larry Shappley, acting under color of state law and in his official capacity as a

Louisiana State Police officer, conducted a warrantless surveillance of Plaintiff's home in a marked unit at 2:41 AM, citing the protected co-parenting message as justification during his September 3, 2025, sworn testimony.

During sworn testimony, Defendant Shappley explicitly admitted that this surveillance was a direct response to the message Plaintiff. In sworn testimony he characterized the message as "threatening," despite being unable to identify the message's actual content, and admitted he had not seen the specific words himself. Further, Defendant Shappley claimed to be unaware of the applicable custody order's terms, which expressly required communication between parents —not through third parties—rendering Plaintiff's message lawful and necessary. Shappley's retaliatory drive-by—conducted in uniform, on duty, and with a state vehicle—was intended to chill Plaintiff's constitutionally protected expression, instill fear, and dissuade Plaintiff from asserting his parental rights or contacting his co-parent regarding lawful custody issues.

This act of state retaliation, executed in response to protected speech and without a legitimate law enforcement purpose, violates the First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, which forbids government actors from retaliating against citizens for constitutionally protected activity. As a direct and proximate result of this unlawful retaliation, Plaintiff suffered:

- Emotional distress and fear of additional state harassment;
- Inhibition of lawful co-parenting communications;
- Further misuse of state mechanisms to influence family court proceedings.

### 3. Violation of Fourth Amendment – Warrantless Search of Government Resources

On or about May 30, 2025, Plaintiff was arrested because of Defendant Shappley's wife making repeated complaints to the Ouachita Parish Sheriff's Office. On or about May 30, 2025,

while acting under color of state law, Defendant Sgt. Larry Shappley used his position as a Louisiana State Police Sergeant to obtain non-public law-enforcement information about Plaintiff Trevor Ray through inter-agency contacts with the Ouachita Parish Sheriff's Office and the Ouachita Correctional Center.

Defendant Shappley was not the arresting officer, was not assigned to Plaintiff's case, and had no official investigative role in Plaintiff's arrest or detention. Nevertheless, Defendant Shappley testified under oath that, following Plaintiff's arrest, he personally contacted jail personnel and law-enforcement officers involved in Plaintiff's arrest in order to obtain information regarding Plaintiff's custodial status and the existence and scope of any protective or no-contact order.

Specifically, Defendant Shappley testified:

> *"I called down to the jail because they have all the information there."*
>
> — Sgt. Larry Shappley, Ray v. Shappley, 4th JDC Docket 25-2431, September 3, 2025

He further testified:

> *"They told us that it was a no-contact order. So, we contact the sheriff's office…"*
>
> — Sgt. Larry Shappley, Ray v. Shappley, 4th JDC Docket 25-2431, September 3, 2025

Defendant Shappley also admitted that these communications were undertaken after his wife contacted him while he was on duty and stated that she believed Plaintiff was violating a protective order. Defendant Shappley testified that, based on information he obtained from jail personnel and the sheriff's office, he and his wife then **"contact[ed] the sheriff's office"** to pursue further action against Plaintiff.

These admissions establish that Defendant Shappley accessed and obtained Plaintiff's non-public law-enforcement information through government systems and personnel **for a**

**personal purpose**, namely, to assist his spouse in a private domestic and custody dispute. Defendant Shappley was not acting pursuant to any assigned duty, warrant, subpoena, or judicial authorization when he sought or obtained this information.

Shortly after Defendant Shappley accessed Plaintiff's custodial and protective-order information through law-enforcement channels, Plaintiff's ex-wife initiated a criminal complaint against Plaintiff. Defendant Shappley testified that he encouraged this course of action and that his actions were premised on the information he had obtained while on duty and under color of law.

Pursuant to Ouachita Parish Sheriff's Office and Ouachita Correctional Center policies, any disclosure of inmate or arrestee information to outside law-enforcement personnel—particularly those not assigned to the case—must be authorized, logged, and documented. Despite Defendant Shappley's sworn testimony confirming that such disclosures occurred, OPSO has denied the existence of any records, logs, or documentation reflecting these contacts, despite a formal legal hold being in effect.

The accessing, obtaining, and use of Plaintiff's non-public law-enforcement information through government databases and personnel for a personal purpose constitutes a warrantless search and misuse of government resources. Defendant Shappley's conduct was not undertaken for any legitimate law-enforcement objective, exceeded the scope of any lawful authority, and violated Plaintiff's rights under the Fourth Amendment to the United States Constitution, as incorporated against the States through the Fourteenth Amendment.

Defendant Shappley's unlawful access to law-enforcement records, and his subsequent transmission of that information to his spouse, materially contributed to Plaintiff's arrest after his spouse relied on the same inaccurate information to initiate criminal complaints against Plaintiff.

That eventual arrest triggered a "prison match" alert within federal Social Security and Veterans Affairs systems, prompting the Department of Veterans Affairs to initiate upon Plaintiff an adverse benefits review. As a result, Plaintiff's federal veterans' benefits, awarded for his combat service in Afghanistan to the United States, were placed at risk of suspension or termination. It was then necessary for the Plaintiff to respond to the VA claim, submit documentation, and actively intervene to prevent termination or interruption of his benefits.

These actions caused Plaintiff economic harm, reputational injury, and administrative burden. The chain of events was directly contributed to by Defendant Shappley's misuse of law-enforcement resources while acting under color of law and for personal purposes unrelated to any legitimate police interest.

### 4. Supervisory Liability for Deliberate Indifference in Violation of the Fourteenth Amendment

At all relevant times, Defendant Captain Eric Cuenca served as the commanding officer of Louisiana State Police Troop F and exercised direct supervisory authority over Defendant Sgt. Larry Shappley. Captain Cuenca had a non-discretionary duty under Louisiana State Police policy to document, refer, and act upon citizen complaints alleging misconduct by subordinate officers, particularly when the conduct involved constitutional violations, abuse of authority, or conflicts of interest.

On or about April 2025, Plaintiff submitted a written complaint to Troop F regarding Defendant Shappley's warrantless surveillance of Plaintiff's private residence during overnight hours. Plaintiff alleged that the conduct was undertaken for personal reasons related to an active custody dispute involving Defendant Shappley's spouse. Captain Cuenca personally received, reviewed, and responded to the complaint. In a written email dated April 7, 2025, Captain

Cuenca acknowledged that "there [was] no indication that these drive-bys were for any official purpose," thereby confirming that the conduct was unrelated to any dispatch, investigation, or law enforcement assignment.

Despite this acknowledgment, Defendant Cuenca failed to comply with mandatory supervisory obligations imposed by Louisiana State Police Policy Order 209 (Complaints and Administrative Investigations) and related directives:

1. Failure to Document the Complaint (P.O. 209 § 4(i–iv))

    a. Captain Cuenca failed to initiate or forward a Personnel Complaint Referral Form (DPSSP 4424A) as required within 48 hours of receipt. No complaint control number was assigned, and the matter was not entered into the formal LSP complaint tracking system.

2. Failure to Refer the Complaint to Internal Affairs (P.O. 209 § 6.vi)

    a. Defendant Cuenca failed to refer the matter to the Commander of Internal Affairs, despite the allegation involving misuse of authority and constitutional misconduct. LSP policy requires such referral even when the complaint originates outside of a DPSSP 4424A form.

3. Failure to Classify the Disposition (P.O. 209 § 7(iii))

    a. No classification was assigned to the complaint, and no formal investigation was initiated. LSP policy requires that all complaints be classified as Sustained, Not Sustained, Exonerated, or Unfounded.

4. Failure to Notify Complainant of Outcome (P.O. 209 § 7(xi))

a. Defendant Cuenca failed to notify Plaintiff in writing of any final disposition, classification, or investigative status within seven days, as required by policy. The only response was a general denial of official purpose and a statement that no further action would be taken.

5. Failure to Identify or Escalate a Conflict of Interest (P.O. 210.03 – Conflict of Interest)

a. Defendant Cuenca was aware that the underlying conduct involved a custody dispute between Plaintiff and Defendant Shappley's spouse. Under Policy Order 210.03, LSP members are prohibited from involving themselves in any investigation or enforcement action where they or their family members have a personal interest. Cuenca failed to document or escalate this conflict.

6. Failure to Address Abuse of Authority (P.O. 211 – Abuse of Authority)

a. LSP Policy Order 211 prohibits officers from using their authority or position to intimidate, coerce, or intervene in personal disputes. Cuenca admitted that Shappley's conduct had no law enforcement basis but took no corrective or disciplinary action in response.

Cuenca's failure to follow these mandatory procedures constituted deliberate indifference to known constitutional violations committed by his subordinate. His inaction allowed the pattern of unlawful conduct by Defendant Shappley to continue, resulting in further constitutional injuries to Plaintiff.

As a direct and proximate result of Captain Cuenca's supervisory failures and policy violations, Plaintiff suffered:

- Additional surveillance and coercion;

- Emotional distress and fear of retaliation;

- Interference with his parent-child relationship;

- Reputational and economic harm following unlawful arrest.

Defendant Cuenca is liable under 42 U.S.C. § 1983 for his deliberate indifference to known constitutional violations, in violation of the Due Process Clause of the Fourteenth Amendment.

## D. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## E. VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

## F. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, awarding:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages against Defendant Shappley for his intentional and reckless conduct;

c. Declaratory relief that Defendants' conduct violated Plaintiff's constitutional rights;

d. An injunction in favor of Plaintiff permanently enjoining Defendant Sgt. Larry Shappley, in his official capacity as a Louisiana State Police officer, from participating in, influencing, initiating, or accessing any law-enforcement activity, records, databases, communications, or inter-agency contacts relating to Plaintiff unless such involvement is expressly authorized by a court of competent jurisdiction and;

e. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

f. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Trevor Ray, MBA
Sergeant First Class, United States Army (Ret.)
Pro Se, In Proper Person
112 Temecula Dr
West Monroe LA 71292
318 3550478